UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| ROSEBUD SIOUX TRIBE, a federally recognized Indian tribe, and its individual members,<br><br>        Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA et al.,<br><br>        Defendants. | CIV. No. 16-3038 – RAL<br><br>**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS** |

COMES NOW the Defendants, by and through Randolph J. Seiler, United States Attorney for the District of South Dakota, and Cheryl Schrempp DuPris, Assistant United States Attorney, and files this reply brief in support of their motion to dismiss, DE 17.

## ARGUMENT

Plaintiff, the Rosebud Sioux Tribe, brings this action asking the Court to address "the United States Government's long-standing and continuing failure to provide adequate medical care" to its members.  DE 24 p. 1.  The United States contends that Plaintiff's claims fall outside the scope of judicial review, and thus, must be dismissed.  Since the undisputed facts show no violation of 25 U.S.C. § 1631(b) exists, Plaintiff cannot establish subject matter jurisdiction in this case.   Additionally, there is no statutory or treaty provision that

mandates that IHS provide a certain level of health care.

### A. Plaintiff Has Failed To Establish An Independent Basis For Subject Matter Jurisdiction Over Its Claims.

Defendants, in their motion to dismiss, raised a factual attack regarding the court's jurisdiction.[1] DE 18.  In its response to the motion to dismiss, DE 24, Plaintiff does not challenge the Defendants' argument that the exceptions to the requirements of 25 U.S.C. § 1631(b) (that the diversion status of the Emergency Department (ED) at Rosebud was initiated for emergency reasons and was temporary) were applicable and that the Defendants' decision to place the Rosebud ED in divert status did not violate the provisions of § 1631(b).  The facts that led to the decision to divert the Rosebud ED were initially set forth in the complaint.  DE 1.  Defendants clarified the reasons for their decision and offered additional facts to explain the events that led to the reopening of the ED at Rosebud on July 15, 2016.  DE 19.  The facts, which are undisputed in the Plaintiff's response, clearly establish that Defendants did not violate § 1631(b).

In a factual challenge under Rule 12(b)(1), the court may consider facts other than those pleaded in the complaint in order to resolve the factual dispute.  *Titus v. Sullivan*, 4 F.3d 590, 593 n.2 (8th Cir. 1993). When the facts in the pleadings are challenged: (1) the court may consider competent evidence outside the pleadings (such as affidavits) to determine the factual dispute, (2)

---

[1] To succeed on a motion under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments. In a facial challenge, the plaintiff's factual allegations about jurisdiction are presumed true and the motion will be granted if those allegations fail to allege an element necessary to establish subject matter jurisdiction. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993).

no presumption of truthfulness attaches to the plaintiff's allegations, and (3) the plaintiff has the burden of proving that jurisdiction exists. *Id.* Defendants contend that even when all uncontroverted facts are viewed favorably to the Plaintiff, its claims must fail as a matter of law.

Section 28 U.S.C. § 1331 grants the district court jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331. "In order to invoke federal jurisdiction under Section 1331, a plaintiff's claim must be based on some federal law independent of that statute." *Midland Farms, LLC v. United States Dep't. of Agric.*, 35 F. Supp. 3d 1056, 1065 (D.S.D. 2014); *Merrell Dow Pharm. v. Thompson*, 478 U.S. 804 (1986). Here, Plaintiff cites to 25 U.S.C. § 1631(b) as its independent basis for jurisdiction. Since the undisputed facts show no violation of 25 U.S.C. § 1631(b) exists, Plaintiff cannot establish subject matter jurisdiction in this case pursuant to § 1331.

The Declaratory Judgment Act, 28 U.S.C. § 2201, does not provide an independent basis for jurisdiction. *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) (quoting *Victor Foods, Inc. v. Crossroads Econ. Dev.*, 977 F.2d 1224, 1227 (8th Cir. 1992)). An independent source of jurisdiction, such as diversity or federal question jurisdiction, must exist before a federal court can order declaratory relief. *State of Mo. ex rel. Mo. Highway & Transp. Comm'n v. Cuffley*, 112 F.3d 1332, 1334 (8th Cir. 1997). Plaintiff's reliance upon 25 U.S.C. § 1631(b) is insufficient to establish subject matter jurisdiction and invoke any relief afforded by 28 U.S.C. § 2201.

The Administrative Procedures Act (APA) is not an independent source of jurisdiction. *Midland Farms,* 35 F. Supp. 3d at 1062 (citing *Cohen v. United States*, 650 F.3d 717, 723 (D.C. Cir. 2011)).  Rather the APA "provides a generic cause of action in favor of persons aggrieved by agency action[.]" *Cohen*, 650 F.3d at 723.  The APA permits "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute," to obtain "judicial review thereof."  5 U.S.C. § 702.  When a plaintiff fails to show the relevant statute, 25 U.S.C. § 1631(b) in this case, has been violated, then judicial review under the APA is not available.

Having essentially conceded that its argument for APA review for alleged violation of 25 U.S.C. § 1631(b) must fail, Plaintiff focuses upon its claim for APA review of Defendants' decisions regarding the spending of its annual appropriation.  DE 24, pp. 9-11.  Plaintiff attempts to distinguish *Lincoln v. Vigil*, 508 U.S. 182 (1993), and *Reuben Quick Bear v. Leupp*, 210 U.S. 50 (1908), asserting that "[t]he appropriation here is in no way gratuitous – indeed, the federal government agreed to provide health care services to the Tribe in exchange for Tribes' ceding land to the federal government here." DE 24, p. 10.  This distinction has no merit.  To the contrary, the appropriation at issue here is the same "Indian health services" appropriation considered by the Supreme Court in *Vigil*.  *Compare*, *e.g.*, Pub. L. No. 98-473, 98 Stat. 1837, 1863-1864 (1985) (lump-sum appropriation for "Indian Health Services"), *with* Pub. L. No. 113-235, 128 Stat. 2130, 2434-2435 (2014) (lump-sum

4

appropriation for "Indian Health Services") (emphasis added); *see also Vigil*, 508 U.S. at 192-195 (discussing the IHS appropriation and determining that its allocation is committed to agency discretion).

As Defendants point out in their Motion to Dismiss, DE 18, pp. 2-3, Congress annually appropriates funds for all IHS services, whether performed under the Indian Health Care Improvement Act (IHCIA), the Snyder Act, or the Indian Self-Determination and Education Assistance Act (ISDEAA), through lump-sum appropriations to serve the health care needs of all Indians, including Plaintiff's members. The general services appropriation for the IHS is public moneys belonging to the government for spending to carry out authorizing legislation, not funds set aside in trust for any particular tribe. *See Vigil*, 508 U.S. at 192-195; *see also Gila River Indian Cmty. v. Burwell*, 2015 U.S. Dist. LEXIS 27595 at *17 (D. Ariz., Mar. 6, 2015). Congress does not appropriate any funds to IHS to fulfill any specific treaty obligation (nor is any specific treaty obligation at issue in this case, as discussed below). As discussed, the Supreme Court has already held that allocation of Congress's lump-sum appropriations for health services to Indians is committed to agency discretion by law and consequently is not subject to judicial review under the APA. *Vigil*, 508 U.S. at 192-195. Accordingly, the IHS's allocation of the lump-sum appropriation for Indian health services is not subject to judicial review, and this Court lacks subject matter jurisdiction over Plaintiff's claim.

Left without an argument that Defendants violated 25 U.S.C. § 1631(b), Plaintiff attempts to keep its claim alive by shifting the focus and attacking the

decision of the Defendants to award a contract to AB Staffing Solutions, LLC (ABSS), speculating that "thus far there is no evidence that the contracting with AB has or will solve the long-standing problems at IHS Rosebud facility." DE 24, p. 6.  In their Complaint, Plaintiff did not allege, nor could it have alleged, any claim relating to the Defendants' awarding of a contract to ABSS since this Complaint was filed prior to the award of the ABSS contract which occurred on May 17, 2016. DE 19, ¶ 15.   Thus, any challenge raised by Plaintiff to any matters related to the contract is not properly before the Court.

**B. Plaintiff's Breach of Trust Claim Should Be Dismissed For Failure to State a Claim.**

In their opposition to Defendants' Motion to Dismiss, Plaintiff argues that IHS breached a duty of trust owed to the Rosebud Sioux Tribe, but they fail to identify a trust corpus or to cite any particular statutory language imposing a trust duty.

Numerous courts have considered the nature of the special federal-tribal trust relationship—including the Supreme Court as recently as 2011, *United States v. Jicarilla Apache Nation*, 564 U.S. 162 (2011)—and all have concluded that the general trust relationship in itself does not provide a basis for an actionable breach of trust claim.  A trust obligation exists only when the United States government is administering tribal property, i.e., a trust corpus exists. *See, e.g.*, *United States v. Cherokee Nation of Okla.*, 480 U.S. 700, 707 (1987). Further, "[t]he Government assumes Indian trust responsibilities only to the extent it expressly accepts those responsibilities by statute." *Jicarilla Apache*

6

*Nation*, 564 U.S. at 177; *see also Menominee Indian Tribe of Wisconsin. v. United States*, 136 S. Ct. 750, 757 (2016) (holding that the general trust relationship did not override the clear requirements of the ISDEAA and the Contract Disputes Act and affirming that "any specific obligations the Government may have under that relationship are 'governed by statute rather than the common law'" (citing *Jicarilla Apache Nation*, 564 U.S. at 165)).

Plaintiff does not point to any such specific obligations in any statutes but simply states that "Rosebud's claims are based on the trust obligation owed to the Tribe by the federal government." DE 24, p. 11. Plaintiff does cite to some broad, general language about Indian health found in the IHCIA and the Snyder Act, DE 24, pp. 10-11, and also refers to the Treaty of Laramie (without pointing to any particular language creating a fiduciary duty). Neither the IHCIA nor the Snyder Act impose a specific trust duty on the IHS. In a case brought for essentially the same reasons as the case at hand (the tribe alleged that IHS violated its trust and statutory duties in providing inadequate, unsafe health care, in the oldest facilities in the IHS system), the Ninth Circuit concluded that "[n]either the Snyder Act nor the Indian Health Care Improvement Act contains sufficient trust-creating language on which to enforce a judicially enforceable duty." *Quechan Tribe of the Ft. Yuma Indian Reservation v. United States*, 599 Fed. App'x 698, 699 (9th Cir. 2015) (unpublished opinion).

Nor does the Plaintiff cite to any specific rights-creating language in the Treaty of Laramie that Defendants have violated. Three provisions in the treaty

7

include language on physicians (Articles IV, IX, and XII), none of which has been violated by the IHS (nor has Plaintiff identified such a violation). The treaty provides that the Government will provide a physician, but the provided physician can be withdrawn after ten years (from 1868) so long as alternative funds (as decided by the Secretary of the Interior) are provided for education of tribal members. DE 27-5. *See also N. Arapaho Tribe v. Burwell,* 118 F. Supp. 3d 1264, 1285 (D. Wyo. 2015) (1868 treaty provision whereby United States agrees to provide a physician to work on the Northern Arapaho Tribe's reservation "simply does not apply in this case," which concerned whether the tribe was exempted from the Affordable Care Act's "large employer mandate"). The Treaty of Laramie does not create any trust obligation at issue in this case, and Plaintiff has failed to show that Defendants have violated the treaty in any way.

Plaintiff's discussion of *Reuben Quick Bear v. Leupp*, 210 U.S. 50 (1908), is misleading and actually undermines the Plaintiff's position since that case held that an appropriation of public funds for Indian education is clearly distinguishable from funds that the government sets aside in trust for the same purpose and manages for an Indian tribe. The Court emphasized that they "are essentially different in character." *Id.* at 80; *see also Cherokee Nation of Okla.*, 480 U.S. at 707 (explaining that the principles of the general trust relationship "do not create property rights where none would otherwise exist"). As with the appropriation for Indian education considered in *Reuben Quick Bear*, the IHS lump-sum appropriation is essentially different in character from a trust fund,

8

which is "money appropriated to fulfill treaty obligations, to which trust

relationship attaches." *See Vigil*, 508 U.S. at 192-195 (also characterizing the

appropriations at issue as "gratuitous appropriations"); *see also Gila River*

*Indian Cmty.*, 2015 U.S. Dist. LEXIS 27595 at *17 ("the general appropriation

for IHS are public moneys belonging to the government, not funds set aside in

trust for the [Gila River Indian Community]"); *Samish Indian Nation v. United*

*States,* 419 F.3d 1355, 1368 (Fed. Cir. 2005) (The ISDEAA does not "convert

the underlying statutory programs into entitlements fairly analogized to a trust

corpus.").

The Supreme Court in *Jicarilla Apache Nation* also clarified the

distinction between funds set aside in trust and the IHS appropriation by citing

to *Vigil* for the principle that, "[w]ithin the bounds of its 'general trust

relationship' with the Indian people, we have recognized that the Government

has 'discretion to reorder its priorities from serving a subgroup of beneficiaries

to serving the broader class of all Indians nationwide.'" *Jicarilla Apache Nation*,

564 U.S. at 182.  Were the IHS appropriation analogous to a trust fund for a

specific tribe and its members (with the fiduciary responsibilities that come

with it), the agency would not have that type of discretion to end a program for

that tribe in favor of a program serving other tribes.  But, the Supreme Court

has already ruled that the IHS appropriation is a gratuitous appropriation and

that its allocation is committed to agency discretion.  *Vigil*, 508 U.S. at 192-

195.

The *Jicarilla Apache Nation* opinion also includes an illuminating discussion of the many competing and conflicting obligations that the federal government must address, and the multiple interests it represents (for example, to all Indian tribes, not just one). This discussion highlights the essential distinction between a private fiduciary and the federal government when it is implementing programs under a congressional appropriation. *Jicarilla Apache Nation*, 564 U.S. at 182. The district court that considered the similar issues presented by the Quechan Tribe of the Fort Yuma Reservation concluded that the issues presented were not for the courts to resolve. It stated that "[a]t its core, plaintiffs' complaint does not raise legal issues, but policy issues as to the proper allocation of resources for Indian health care. The Tribe is just one of many interest groups throughout the country competing for scarce resources. The Tribe's concerns are best addressed through the political process. Its members' concerns are best addressed through tort claims." *Quechan Tribe of the Fort Yuma Reservation v. United States*, 2011 U.S. Dist. LEXIS 36778 at *18 (Mar. 31, 2011). The same reasoning applies to the significant policy issues raised by Plaintiff in this case.

## C. Plaintiff's Constitutional Claims Should Be Dismissed for Failure to State a Claim.

Plaintiff asserts constitutional equal protection and due process claims and specifically points to the disparity in federal funding for inmates and veterans in comparison to the funding for Indian tribes. While unquestionably an important issue, the overall allocation of federal resources to programs for Indians, veterans, prisoners—and for myriad other groups and initiatives

10

across the nation—is beyond the scope of what can be addressed by the courts in piecemeal litigation and is more properly addressed by Congress and through the political process.  The allocation of limited resources simply does not provide the basis for a cognizable constitutional claim.

It is well settled that the government has broad discretion to allocate funds for discretionary programs without violating equal protection rights. *Dandridge v. Williams*, 397 U.S. 471, 485 (1970); *Quechan Tribe of the Fort Yuma Reservation*, 2011 U.S. Dist. LEXIS at *17.  The allocation of funds from a lump sum appropriation is committed to agency discretion by law.  *Vigil*, 508 U.S. at 192.  The IHS allocation of the funds appropriated by Congress is within its discretion and is unreviewable by the Court.  *Id.*

Plaintiff argues that health care services provided to the tribe qualify as an entitlement to a constitutionally protected property interest and it relies heavily on *Rincon Band of Mission Indians v. Califano*, 464 F. Supp. 934 (N.D. Cal. 1979) for this assertion.  Plaintiff's reliance on *Rincon* is misplaced for several reasons.  First, *Rincon* is distinguishable from the instant case in that *Rincon* involved a dispute about the allocation of IHS funding, while Plaintiff in this case challenges the amount of funds for Indian tribes versus that provided by Congress for other non-Indian groups like veterans and inmates.  Second, it is notable that, while *Rincon* was affirmed by the Ninth Circuit, the appellate court determined that IHS breached statutory responsibilities and explicitly stated that it did not reach the constitutional question.  *Rincon Band of Mission Indians v. Harris*, 618 F.2d 569, 570 (9th Cir. 1980).

11

Most importantly, the validity of both the district court and the Ninth Circuit decisions in *Rincon* are suspect in light of the Supreme Court's decisions in *Vigil* and *Dandridge*.  Contrary to Plaintiff's claims, health care provided by IHS is not an entitlement and courts have consistently distinguished the governmental responsibilities for health care, and the related congressional appropriations, from property rights.  A congressional appropriation is "qualitatively different" from property managed by the government on behalf of Indian tribes.  *Gila River Indian Cmty.*, 2015 U.S. Dist. LEXIS 27595 at *16; s*ee also Scholder v. United States,* 428 F.2d 1123, 1129 (9th Cir. 1970) (distinguishing congressional appropriations from treaty or tribal funds that belong to Indians and are held in trust by the United States). The Supreme Court recognized this distinction when it considered the IHS appropriation in 1993 (14 years after the district court's decision in *Rincon*) and held that allocation of the IHS appropriation was committed to agency discretion.  *Vigil*, 508 U.S. at 192.  The *Vigil* decision clearly overturns any contradictory elements of the *Rincon* decision.

Both courts that have considered the meaning of *Rincon* in the context of cases challenging the IHS allocation of resources stated that they found it unpersuasive and concluded, citing *Dandridge*, that the government has broad discretion to allocate funds for discretionary programs without violating equal protection rights.  In *Hammitte v. Leavitt*, 2007 U.S. Dist. LEXIS 76051 (E.D. Mich. 2007), Indians from the metropolitan Detroit area claimed an equal protection violation based on the fact that about 1 percent of IHS funding was

12

allocated to urban Indians despite the presence in urban areas of more than 50 percent of the Indian population.  The court dismissed the claim, concluding that the case raised "policy issues, not legal issues, as to the proper allocation of resources. Their concerns are best addressed through the legislative, not the judicial, process." *Id.* at *27.  In *Quechan Tribe of the Fort Yuma Reservation*, 2011 U.S. Dist. LEXIS at *17-18, the district court also stated that it found *Rincon* unpersuasive in the context of claims of inadequate health care at the Fort Yuma Service Unit and dismissed the equal protection claim. *Id.*

**D. The District Court May Consider Facts Without Converting a Motion to Dismiss into a Motion for Summary Judgment.**

A district court may consider matters outside the pleadings without converting a motion to dismiss into a motion for summary judgment. *Deuser v. Vecera*, 139 F.3d 1190, 1191 n.3 (8th Cir. 1998) (quoting *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990) (authorizing a court to look to evidence outside the pleadings when determining a Rule 12(b)(1) motion based upon a "factual attack")).  Regardless, Plaintiff argues that to the extent any of its claims are challenged by facts contained in the declaration of Michael Weahkee, DE 19, the Defendants' motion to dismiss "must be treated as a motion for summary judgment." DE 24, p. 15.

Defendants contend that although the Weahkee declaration was not expressly part of the complaint, the "divert status" of the Rosebud ED is central to the Plaintiff's claim.  DE 1, ¶ 37.   Moreover, the press releases attached to the Weahkee declaration relate to the divert status of the Rosebud ED, and by

definition, the press releases were issued to the public at large, and thus, may be considered without converting a motion to dismiss to a motion for summary judgment. *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005). "On a motion to dismiss, a court must primarily consider the allegations contained in the complaint, although matters of public and administrative record referenced in the complaint may also be taken into account." *Deerbrook Pavilion, LLC v. Shalala*, 235 F.3d 1100, 1101 (8th Cir. 2000). *See also, Venture Assoc.'s Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) (indicating that "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim").

Plaintiff's lawsuit is based principally on the temporary divert status of the Rosebud ED. The Weahkee declaration is relevant to the central claim in the complaint, and it raises a factual challenge as to the propriety of the federal court to adjudicate the claim. Plaintiff does not dispute the content of the Weahkee declaration. The facts contained in the Weahkee declaration regarding the resumed operation of the Rosebud ED is clearly relevant to the jurisdictional issue. The declaration merely sets forth a comprehensive set of facts that will enable a rational determination of the motion to dismiss in accordance with the standards set forth in *Deuser and Osborn*. Where a factual record is developed to decide the merits of jurisdictional claims, Rule 12(b)(6) does not convert a motion to dismiss to one for summary judgment.

14

Although the Defendants invoke Rule 12(b)(6) as additional grounds for its motion to dismiss, the declaration is offered primarily as a factual challenge under Rule 12(b)(1).  The "district court has the authority to consider matters outside the pleadings on a motion challenging subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)."  Rule 12 does not demand summary judgment treatment where a factual record is developed.  Moreover, "[t]he court's election to do so does not convert the 12(b)(1) motion to dismiss into a motion for summary judgment."  *Deuser*, 139 F.3d at 1192.

### E. Plaintiff is Not Entitled to Discovery.

Plaintiff's request for discovery is unreasonable and should be denied. Even if the Court converts the motion to dismiss to one for summary judgment, Plaintiff has not set forth sufficient facts entitling it to discovery.  To obtain discovery pursuant to Rule 56(d), the party opposing summary judgment must file an affidavit "affirmatively demonstrating . . . how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact."  *Ray v. Am. Airlines, Inc.*, 609 F.3d 917, 923 (8th Cir. 2010).  Rule 56(d) "is not a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that his opposition is meritorious." *Duffy v. Wolle*, 123 F.3d 1026, 1040 (8th Cir.1997) overruled on other grounds by *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011); *see also Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir.1997) ("Rule 56(f) does not condone a fishing expedition."). A nonmovant seeking relief under Rule 56(d)

15

must do more than speculate that it may discover additional facts that would overcome a motion for summary judgment, *see Stanback v. Best Diversified Prods.*, 180 F.3d 903, 911 (8th Cir. 1999), and must submit an affidavit showing "'what specific facts further discovery might unveil.'" *Id.* (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1238 (8th Cir. 1997)). "Where a party fails to carry [his] burden under Rule [56(d)], 'postponement of a ruling on a motion for summary judgment is unjustified.'" *Id.*  It is not enough for a party opposing summary judgment to set forth facts she hopes to elicit from discovery.  The party must "show that the facts sought exist." *Toben v. Bridgestone Retail Operations, LLC*, 751 F.3d 888, 895 (8th Cir. 2014).

The Plaintiff argues that it requires discovery regarding "its claim challenging the lack of notice to Congress regarding the closing of the Rosebud Emergency Department" stating discovery "is necessary to determine if the closure was "temporary" and whether the Hospital (not the ED) will remain open and functional." DE 24, p.16.  Plaintiff also requests discovery "to determine the quality of services provided at Rosebud Hospital." *Id.*  Discovery is completely unnecessary for resolution of this lawsuit.  The facts undeniably establish that no violation of 25 U.S.C. § 1631(b) occurred and that no jurisdiction exists.  Plaintiff offers no reasonable explanation as to why discovery would change this conclusion.

Discovery as requested by Plaintiff would lead to nothing more that speculation about whether "AB has or will solve the long-standing problems at the IHS Rosebud facility." DE 24, p. 6.  The ABSS contract was awarded, in

16

part, for the purpose of staffing and managing the Emergency Department at Rosebud.  What may or may not happen in the future are not facts known at present and, therefore, could not be subject to discovery.

Further, it is completely beyond the scope of this lawsuit to engage in discovery to determine the quality of services at the Rosebud Hospital or those provided by ABSS.  The contract with ABSS was awarded pursuant to Federal Acquisition Regulations and disputes are subject to the Contract Disputes Act, 41 U.S.C. § 7103 (2011).  The responsibility for determining the quality of services being provided by ABSS at Rosebud, a matter contract performance, is initially a matter between Defendants' contracting officer and ABSS.  Plaintiff has not stated a basis for this Court's jurisdiction to interpret the quality of care being provided by ABSS or to determine their performance under their contract with the Defendants.

Plaintiff asserts that, in an effort to obtain factual information about issues with AB Staffing at other IHS facilities, it filed a request under the Freedom of Information Act (FOIA) on June 20, 2016, seeking documents related to AB Staffing at any IHS facility. DE 24, p. 7; DE 26, ¶ 6.  In an effort to bolster the argument for continuing this case and as one of their primary reasons for requesting discovery in this case, Plaintiff unequivocally states that "[t]he response from the Department of Health & Human Services dated July 28, 2016, refused to release any records responsive to those (FOIA) requests." DE 25, p. 7; DE 26, ¶ 6.

17

In fact, the Defendants received the Plaintiff's June 20, 2016 FOIA request, and identified it as FOIA Case: 16-116. Plaintiff made four requests:

1) the contract between Indian Health Service (IHS) and AB Staffing Solutions, LLC related to Rosebud Hospital;

2) all contracts between IHS and AB Staffing Solutions, LLC from January 1, 2006 to the present;

3) all documents or communications regarding or relating to reviews, reports, or evaluations of AB Staffing Solutions, LLC's performance pursuant to its contracts with IHS including any documents termination a (sic) contract between IHS and AB Staffing Solutions, LLC from January 1, 2006 to present; and

4) all documents or communications regarding or relating to complaints concerning performance of AB Staffing Solutions LLC or any of it employees or independent contractors, at any IHS facility from January 1, 2006 to present.

On July 28, 2016, Defendants' FOIA Officer sent a letter to Rosebud President William Kindle, responding to FOIA Case 16-116. *Id.* In that letter, the FOIA Office issued a partial release of records, including all of AB Staffing Solutions LLC's contracts with IHS, redacting only line item costs and Employer Identification Numbers (EIN). (This information was withheld pursuant to 5 U.S.C. § 552(b)(4) and 45 C.F.R. § 5.65, which pertain to trade secrets, commercial or financial information obtained from a person that is privileges or confidential.) *See* Ex. 1, attached hereto.

The FOIA Officer would not release the documents responsive to the third and fourth requests. The withholding of those documents was based upon 5 U.S.C. §§ 552(b)(3) and (5) and 45 C.F.R. §§ 5.64 and 5.66. Exemption 3 of the FOIA pertains to information exempted from release by statute, which in this instance was the Procurement Integrity Act, 41 U.S.C. § 2102(a)(1). Exemption

18

5 of the FOIA pertains to certain inter and intra-agency communications protected by the deliberative process privilege and a privilege for confidential commercial information where the information is generated by the government leading up to award of a contract. *Id.* The Plaintiff was notified of its appeal rights in the July 28, 2016, letter. The FOIA Officer sent Rosebud President Kindle a final response to FOIA Case 16-116 on August 25, 2016. *See* Ex. 2 attached hereto. Thus, in response to Plaintiff's FOIA requests, the Defendants' FOIA Officer provided numerous documents. If Plaintiff was unsatisfied with the FOIA response, the FOIA Officer's response outlines the appeal rights for the Plaintiff.

The Plaintiff requests discovery with respect to its statutory claims, DE 24, p. 14, arguing that discovery is necessary to determine "whether the hospital will remain open" and to determine the quality of services provided, DE 24, p. 16. Plaintiff has not made the necessary showing for discovery under Rule 56(d). Plaintiff's statutory claim rests on the past temporary divert status of the Emergency Department. Plaintiff fails to "affirmatively demonstrate" what discovery is necessary to create a genuine issue of fact as to the temporary nature of the divert status or the relevance of the quality of services. The Plaintiff infers that discovery will predict whether the Emergency Department will remain open, but its claims are based solely on the past decision to temporarily divert. Moreover, the issues regarding the quality of services based upon circumstances at the San Carlos Apache Health Center, DE 28, have no relevance to the Plaintiff's claims.

Plaintiff argues that it needs discovery with respect to its APA claim.[2]  DE 24, p. 15.  Pursuant to the APA, 5 U.S.C. § 706(2), an agency decision can be reversed where the agency action was arbitrary or capricious, an abuse of discretion or otherwise not in accordance with the law.  Section 706(2)(A).  "To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416 (1971). Agency decisions are given a "high degree of deference." *Sierra Club v. E.P.A.,* 252 F.3d 943, 947 (8th Cir. 2001). "The court is not empowered to substitute its judgment for that of the agency."  *Overton Park,* 401 U.S. at 416. Typically, judicial review under the APA is limited to the administrative record that was before the agency when it made its decision. *Voyageurs Nat'l. Park Ass'n v. Norton*, 381 F.3d 759, 766 (8th Cir. 2004).  There must be a strong showing of bad faith or improper behavior before a reviewing court may permit discovery and evidentiary supplementation of the administrative record. 5 U.S.C. § 706.  Plaintiff has not made such a showing.  Accordingly, discovery with respect to the APA claim should not be permitted.

---

[2] With respect to its APA claim, the Tribe states that it needs discovery to determine if IHS has discretion with respect to its spending appropriations to pay a Fair Labor Standards Act settlement. DE 24, p. 16.  This information would add nothing to Plaintiff's argument.  Even if the IHS took funds to pay wages of IHS employees involved in health care, those funds are still being used for health care related expenses.

## CONCLUSION

The party seeking federal court jurisdiction bears the burden of establishing a jurisdictional basis for judicial review.  When the jurisdictional facts are challenged and uncontroverted, such as here, the presumption of truthfulness disappears, and Plaintiff's claims fail as a matter of law. Accordingly, the complaint must be dismissed.

Dated this 6th day of October, 2016.

RANDOLPH J. SEILER
United States Attorney

*/s/ Cheryl Schrempp DuPris*
Cheryl Schrempp DuPris
Assistant U.S. Attorney
P. O. Box 2638
Sioux Falls, SD 57101-2638
(605) 330-4400
Cheryl.Dupris@usdoj.gov

**OF COUNSEL:**
James M. Cribari
Assistant Regional Counsel
U.S. Department of Health and Human Services
Office of General Counsel, Region VIII
Byron G. Rogers Federal Office Building
1961 Stout Street, Room 08-148
Denver, CO  80294
(303) 844-7802
James.Cribari@hhs.gov

Michael Wolf
Senior Attorney
HHS Office of the General Counsel
Public Health Division
U.S. Dept. of Health and Human Services
5600 Fishers Lane, Room 4A-37
Rockville, MD  20857
(301) 443-9572
michael.wolf@ihs.gov