UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| ROSEBUD SIOUX TRIBE, a federally recognized Indian tribe, and its individual members,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA; DEPARTMENT OF HEALTH AND HUMAN SERVICES, an executive department of the United States; THOMAS E. PRICE, Secretary of Health and Human Services; INDIAN HEALTH SERVICE, an executive agency of the United States; MICHAEL D. WEAKHEE, Acting Director of Indian Health Service; JAMES DRIVING HAWK, Acting Director of the Great Plains Area Indian Health Service,[1]<br><br>Defendants. | 3:16-CV-03038-RAL<br><br><br>OPINION AND ORDER DENYING DEFENDANTS' MOTION TO EXCLUDE THE WARNE REPORT |

The Rosebud Sioux Tribe (the Tribe) filed a Complaint against the United States of America, the Department of Health and Human Services (HHS) and its Secretary, the Indian Health Service (IHS) and its Acting Director, and the Acting Director of the Great Plains Area of IHS (collectively the Government), seeking declaratory and injunctive relief due to the allegedly inadequate health care provided by IHS to tribal members. Doc. 1. The Government now files a

---

[1] Under Fed. R. Civ. P. 25(d), the following public officials were substituted automatically as proper parties: Thomas E. Price was sworn in as the Secretary of Health and Human Services on February 10, 2017, and is substituted for Sylvia Mathews Burwell; Michael D. Weakhee is the current acting director of the Indian Health Service and is substituted for Mary L. Smith; and James Driving Hawk is the current acting director of the Great Plains Area Indian Health Service and is substituted for Kevin Meeks.

1

motion to exclude the Plaintiffs' expert report (the Warne Report) and testimony of Dr. Donald Warne pursuant to Federal Rule of Civil Procedure 7 and Federal Rules of Evidence 401 and 702. Doc. 66. The Tribe opposes the motion. Doc. 69. For the reasons stated below, the Government's motion to exclude the Warne report is denied.

I. **Background**

On April 28, 2016, the Tribe filed this suit, an action for declaratory and injunctive relief, with four counts. Doc. 1. Counts I and II of the Tribe's Complaint are based on a provision of the Indian Health Care Improvement Act (IHCIA), 25 U.S.C. § 1631(b)(1), which requires a one-year notice to Congress before any IHS hospital, facility, or portion of such can be closed, in order to evaluate the impact of the closure. Doc. 1 at ¶¶ 45–59. Count I alleges a violation of the IHCIA directly, while Count II seeks judicial relief under the Administrative Procedures Act, 5 U.S.C. § 702, for the alleged violation of the IHCIA. Doc. 1 at ¶¶ 45–59. Count III alleges violations of treaty rights, other statutory obligations, and the trust responsibility obliging the Government to provide health care services to the Tribe's members. Doc. 1 at ¶¶ 60–66. Count IV alleges violations of equal protection and due process under the Fifth Amendment of the United States Constitution stemming from the Rosebud IHS Hospital's emergency department closure. Doc. 1 at ¶¶ 67–77. The Complaint seeks various declaratory and injunctive relief, as well as costs, fees, and other relief deemed proper. Doc. 1 at 21–23.

This Court previously granted the Government's motion to dismiss Counts I and II because the four-month closure of the Rosebud IHS emergency department was in fact temporary and thus not actionable under IHCIA. Doc. 36. This Court also granted dismissal of Count IV of the Complaint because the Tribe failed to state a viable claim for denial of equal protection and due

process. Doc. 36. This Court, however, denied the motion as to Count III. Doc. 36. Count III claims,

> The federal government has a specific, special trust duty, pursuant to the Snyder Act, the IHCIA, the Treaty of Fort Laramie, and federal common law, to provide health care services to the Tribe and its members and to ensure that health care services provided to the Tribe and its members do not fall below the highest possible standards of professional care.

Doc. 1 at ¶ 61. Alleging that the Government has breached this trust duty, the Tribe seeks declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201. Doc. 1 at ¶¶ 64–65. The Tribe also seeks "a mandatory injunction requiring IHS to comply with its trust duties to the Tribe, protect the Tribe's entitlement to healthcare services, and take sufficient measures to ensure that health services are provided to members of the Tribe to permit the health status of Indians to be raised to the highest possible level." Doc. 1 at ¶ 66. This Court analyzed Count III at some length, reviewed applicable case law, and concluded that the existence of some duty to the Tribe and the nature of the Tribe's allegations were sufficient to state a claim. Doc. 36 at 15–22.

The Government now seeks to exclude Dr. Warne's expert opinions from use at trial. Doc. 66 at 1. The Government argues that the Warne Report does not identify a specific treaty duty that the Government has failed to perform and "does not proffer admissible evidence as to the Plaintiffs' claim of causation." Doc. 66 at 1. Much of the Government's argument reads like an argument for summary judgment on Count III, Doc. 67, which the Government subsequently has filed, Doc. 80.

## II. Legal Standards

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence. Under Rule 702, the trial judge acts as a "gatekeeper" screening evidence for relevance and reliability. Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589, 597 (1993); United States v. Montgomery, 635 F.3d 1074, 1089–90 (8th Cir. 2011). Under Rule 702, a "witness who

3

is qualified as an expert by knowledge, skill, experience, training, or education" may give testimony at trial in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony." Arcoren v. United States, 929 F.2d 1235, 1239 (8th Cir. 1991). "The rule clearly is one of admissibility rather than exclusion." Sappington v. Skyjack, Inc., 512 F.3d 440, 448 (8th Cir. 2008) (citation omitted). "The exclusion of an expert's opinion is proper only if it is so fundamentally unsupported that it can offer no assistance to the jury." Wood v. Minn. Mining & Mfg. Co., 112 F.3d 306, 309 (8th Cir. 1997) (cleaned up) (citation omitted).

District courts have discretion in determining whether to admit expert witness testimony under Rule 702. UnitedHealth Grp. Inc. v. Exec. Risk Specialty Ins. Co., 870 F.3d 856, 865 (8th Cir. 2017). Nonetheless, the proponent of expert testimony must establish its admissibility by a preponderance of the evidence. Daubert, 509 U.S. at 592 n.10; Adams v. Toyota Motor Corp., 867 F.3d 903, 915 (8th Cir. 2017).

The Eighth Circuit has determined that a district court should apply a three-part test when screening testimony under Rule 702.

> First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires.

Polski v. Quigley Corp., 538 F.3d 836, 839 (8th Cir. 2008) (citation omitted). The third part of the test pertains to the three elements added to Rule 702 after Daubert and its progeny. Lauzon v. Senco Products, Inc., 270 F.3d 681, 686 (8th Cir. 2001).

### III. Discussion

Part two and three of the Eighth Circuit screening test are largely undisputed. Under part two of the test, Dr. Warne must be qualified to assist the finder of fact. Polski, 538 F.3d at 839. "Rule 702 only requires that an expert possess knowledge, skill, experience, training, or education sufficient to assist the trier of fact, which is satisfied where expert testimony advances the trier of fact's understanding to any degree." Robinson v. GEICO Gen. Ins. Co., 447 F.3d 1096, 1100 (8th Cir. 2006) (cleaned up) (citation omitted). The Government does not challenge Dr. Warne's qualifications, Doc. 72 at 2, and he is in fact qualified. Dr. Warne received his Bachelor of Science in Kinesiology from Arizona State University in 1989, followed by a Doctor of Medicine from Stanford University School of Medicine in 1995, and then a Master of Public Health in Health Policy and Management from Harvard School of Public Health in 2002. Doc. 70-3 at 2. He has attended postgraduate trainings, as well as received five different licensures and certifications. Doc. 70-3 at 2. Dr. Warne currently serves as the Associate Dean of Diversity, Equality and Inclusion, Director of the Indians Into Medicine Program, and Professor of Family and Community Medicine at the University of North Dakota School of Medicine and Health Sciences. Doc. 70-3 at 3. His other professional experiences, to name a few, include being a Consultant to the American Indian Health Department at Sanford Health, Director of the Office of Native American Health at Sanford Health, Senior Policy Advisor and Executive Director of the Great Plains Tribal Chairmen's Health Board, Health Policy Research Director at Inter Tribal Council of Arizona, and Senior Policy Consultant, President, and CEO for American Indian Health Management & Policy.

5

Doc. 70-3 at 3. Dr. Warne has twenty peer-reviewed publications that he authored or co-authored on Native American health issues. Doc. 70-3 at 4–5. He also has authored peer-reviewed policy briefs and book chapters on these issues. Doc. 70-3 at 5–6. Lastly, Dr. Warne serves or has served on numerous boards in different capacities, including being a member of the Health Disparities Subcommittee for the Center for Disease Control and Prevention and a member of the Board of Directors for Rapid City Regional Health. Doc. 70-3 at 6. Dr. Warne is qualified to assist the finder of fact under part two of the Eighth Circuit test.

Under part three, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides assistance to the finder of fact. The third part of the Eighth Circuit's test pertains to three elements added to Rule 702 after Daubert and its progeny. Lauzon, 270 F.3d at 686. These include that "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Id. (quoting Fed. R. Evid. 702). The Government specifically does not challenge Dr. Warne's "credibility . . . or his ability to present information on the status of Native American health." Doc. 72 at 2. Dr. Warne's expert opinion is reliable in an evidentiary sense. Dr. Warne bases his opinion on publicly available medical and scientific literature relating to the health status of American Indians and Alaska Natives, including disparities between those populations and other populations in the United States. Much of the public information comes from the HHS, the IHS, the Centers for Disease Control and Prevention, and the Center for Medicare and Medicaid Services, including reports by the Office of Inspector General of the HHS, and the United States Government Accountability Office. Doc. 70-1 at 5. His opinion consists of reading and analyzing these

materials and then using his experience, education, skill, and knowledge to apply it to the facts at hand.

The Government only explicitly challenges admissibility of Dr. Warne's testimony under the first part of the test. Doc. 67 at 10 ("Here, the Government is basing its challenge on the first factor: whether the evidence is useful to the finder of fact."). Both parties agree that the relevant issue in this case is whether the health care services provided to the Tribe are sufficient to meet the Government's treaty and statutory duties to the Tribe. Doc. 67 at 10; Doc. 69 at 2. Dr. Warne's expert opinion is relevant for determining this issue. Expert testimony is relevant and helpful to the jury if it concerns matters beyond the general knowledge of average individuals. See United States v. Shedlock, 62 F.3d 214, 219 (8th Cir. 1995). Dr. Warne's opinion concerns matters beyond the general knowledge of average individuals. Dr. Warne's expert opinion is that the care provided at the Rosebud Service Unit is not sufficient to either raise the health status of the Indians served there to the highest possible level or eliminate the significant health disparities suffered by members of the Tribe. Doc. 70-1 at 20. The Government is correct in arguing that Dr. Warne's report does not offer an opinion how and whether that in fact is the scope of the Government's duty, however, his opinion need not do so. Indeed, as a medical doctor, he probably is not qualified to testify to the legal duty owed by the Government to the Tribe or the precise source of that legal duty. Nevertheless, his opinion is relevant to whether or how any duty has been breached; the Government has some duty to the Tribe to provide health care, and Dr. Warne's opinions on what that care has been is relevant.

The Government argues that "[n]othing in Dr. Warne's proffered report is relevant to any specific duty owed by the Defendants [and does not proffer admissible evidence that would substantiate Plaintiffs' claim of causation], and therefore, the Warne report does not assist the trier

7

of fact in this case as is required under the first part of the Daubert test." Doc. 67 at 7, 9–10. The Government seeks to exclude Dr. Warne's expert opinion because, in sum, the opinion does not prove every element of the Tribe's case. See Doc. 67. The Government's arguments about the specific duty are more properly made in a motion for summary judgment, not in a motion to exclude testimony of an expert pursuant to Federal Rule of Evidence 702.

After reviewing the parties' briefs, the expert report, and the related filings, and after weighing all the factors, this Court finds that Dr. Warne is qualified, his opinions are relevant to the allegations of Count III of the Complaint, and his opinions are sufficiently reliable. The Tribe at this point has carried its burden of establishing that Dr. Warne's testimony is admissible by a preponderance of the evidence. While admissible, the Government is certainly free to attack Dr. Warne's testimony at trial. See Kuhn v. Wyeth, Inc., 686 F.3d 618, 625 (8th Cir. 2012) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." (quoting Daubert, 509 U.S. at 596)). Any determination about the specific duty owed by the Government to the Tribe may prompt limitation of some of Dr. Warne's opinions. But his testimony will not be altogether excluded based on the arguments put forth by the Government.

## IV. Conclusion

For the reasons stated above, it is hereby

ORDERED that Defendants' Motion to Exclude the Warne Report, Doc. 66, is denied.

DATED this 9th day of July, 2019.

BY THE COURT:

_____
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE

8